UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GEREL PINKNEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action 07-00352 (RCL) |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This matter comes before the Court on plaintiff's motion for judgment of reversal of the defendant's final administrative decision denying plaintiff's claim for Disability Insurance Benefits.  Upon consideration of plaintiff's motion [13] for judgment of reversal, the defendant's motion as corrected [19, 20, 21] for judgment of affirmance, the applicable law, and the entire record herein, the Court concludes that plaintiff's motion is DENIED and defendant's motion is GRANTED.  The Court's reasoning is discussed below.

## BACKGROUND

**I. Procedural Background**

Plaintiff, Gerel Pinkney filed for Disability Insurance Benefits and Supplemental Security income Benefits pursuant to Titles II and XVI of the Social Security Act on July 3, 2003.  (Tr. 13.)  Plaintiff alleged disability based on HIV infection and paranoia.  (*Id.*)  Plaintiff modified the onset date of his disabilities at his administrative hearing from March 1, 1998 and July 1, 2003 to February 11, 2004.  (*Id.*)  Initially and upon reconsideration, plaintiff's claims were

1

denied. (*Id.*)  A requested hearing before an Administrative Law Judge ("ALJ") was held on August 3, 2005, and plaintiff was again denied benefits in a decision dated September 22, 2005. (Pl.'s Mot. for J. of Reversal at 2.)  "On April 21, 2006, the Appeals Council determined there was no basis for granting the Request for Review," *id.*, "rendering the ALJ's decision the final decision of the Commissioner." (Def.'s Mot. for Affirmance at 2.)  Pursuant to 42 U.S.C. § 405(g) plaintiff commenced this action for judicial review.

## II. Factual Background

Plaintiff is a 53 year old man (as of January 22, 2009) with an eighth-grade education and a general equivalency diploma. (Pl.'s Mot. for J. of Reversal at 2.)  Plaintiff argues that he is disabled due to being HIV positive and paranoid. (*Id.* at 1.)  After undergoing an intake interview at Community Connections on February 21, 2003 plaintiff was diagnosed with schizophrenia, paranoid type, and cocaine and alcohol dependence in early full remission. (Tr. 119, 123.)  Noting these diagnoses, a Disability Determination physician completed a Physical Residual Functional Capacity Assessment on July 9, 2003, finding plaintiff to be capable of work at all exertional levels. (*Id.* 144-150.)  On October 31, 2003 plaintiff visited Community Connections for an episode of alcohol/drug abuse and it was noted at this time that plaintiff had never been hospitalized for mental health. (*Id.* 158.)  On February 6, 2004, plaintiff went in for a consultative psychological evaluation. (*Id.* 178-181.)  At this time it was noted that plaintiff had been incarcerated a series of times, had worked mainly as a construction worker, there were some residuals of a thought disturbance, and plaintiff's IQ results ranged from a score of 68 to 79, putting plaintiff between the "mentally deficient and borderline range of intellectual activity." (*Id.*; Def.'s Mot. of Affirmance at 4.)  On February 27, 2004 a psychiatrist completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment

after reviewing plaintiff's records. (Tr. 184-201.) The psychiatrist noted that plaintiff remained "mentally capable of performing routine tasks if abstaining from substances and compliant with treatment." (*Id.* 200.) Further, plaintiff was found to be only moderately limited in daily living activities, maintaining social functioning, and maintaining concentration, persistence, or pace. (*Id.* 194; Def.'s Mot. of Affirmance at 4.) On July 9, 2004, a second Residual Functional Capacity Assessment was completed and this examiner found plaintiff was able to lift 100 pounds or more occasionally and 50 pounds or more frequently; plaintiff can sit, stand, and walk about 6 hours out of 8 hours in a day, push and/or pull to an unlimited degree; and plaintiff is able to climb, balance, stoop, kneel, crouch, and crawl. (Tr. 207-214.)

In the past plaintiff has worked as a laborer—working only at the substantial gainful activity level since 1970 in 1994 and 1996. (*Id.*) Plaintiff testified that he currently works with a temporary job agency working whenever there is a job available. (*Id.* 237-38.) A vocational expert ("VE"), Martin Kranitz, testified that plaintiff's past work appeared to be unskilled and medium exertional work. (*Id.* 248-49.) During his testimony the VE was asked a series of hypothetical questions by the ALJ in regards to plaintiff. (*Id.* 249-254.) Ultimately, the VE concluded that even with limitations there were numerous jobs available locally and nationally for plaintiff to perform. (*Id.*)

The ALJ concluded that plaintiff was not disabled under the meaning of the Social Security Act based on the belief that even with limitations, plaintiff had the residual functional capacity ("RFC") to perform the exertional demands of medium work. (*Id.* 10-23.) The ALJ limited the jobs to those not requiring climbing of ladders, ropes, and scaffolds, exposure to hazardous heights, hazardous moving machinery, and extreme temperature changes. However, it was determined that plaintiff was capable of occasionally climbing stairs and ramps, balancing,

stooping, kneeling, and crouching. Further, plaintiff "was limited to low stress routine work, with moderate limitations as to performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, accepting instructions, and responding appropriately to criticism from supervisors." (Pl.'s Mot. for J of Reversal at 3; Tr. 10-23.)

## DISCUSSION

There is substantial evidence on the record to support the ALJ's conclusion that plaintiff was not disabled under the meaning of the Social Security Act.

**I. Legal Standard for Review of Final Decision of the Commissioner of Social Security**

The Social Security Act, 42 U.S.C. § 405(g) gives federal district courts jurisdiction over civil cases that challenge the final decision of the Commissioner of Social Security. Social Security Act, 42 U.S.C. § 405(g). The Court does not review the decision *de novo*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), but rather limits its review of the Commissioner's decision to whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). Substantial evidence "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. Fed. Energy Regulatory Comm'n*, 315 F.3d 362, 365-66 (D.C. Cir. 2003); *see also Richardson*, 402 U.S. at 390, 401 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). "In seeking judicial review of a final determination of the Social Security Commission, the plaintiff bears the burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied. *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Jones v. Shalala*, 1994 WL 776887 (D.D.C. August 31, 1994) at \*\*2." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64

(D.D.C. 2006).

The reviewing court must give considerable deference to the Commissioner's decision but remains obligated to ensure that the decision was based on "substantial evidence." 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]); *see also Richardson*, 402 U.S. at 389. Therefore, this standard of review requires the Court to carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts. *See Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). The ALJ, not the Court is ultimately responsible for weighing all of the evidence and coming to conclusion on any issues. *See Hays v. Sullivan*, 907 F.2d 1453, 145 (4th Cir. 1990). The Court will not disturb the Commissioner's final decision if it is based on substantial evidence in the record and correctly applies legal standards.

**II. The Judgment of the Administrative Law Judge is Supported by Substantial Evidence**

The plaintiff argues that the ALJ's "decision fails to be supported by substantial evidence, and is erroneous as a matter of law" because: (1) the ALJ "erroneously assessed the plaintiff's residual functional capacity," (2) the ALJ "erroneously determined that the plaintiff was capable of performing his past-relevant work," (3) the ALJ "erroneously relied upon the testimony of the vocational expert," (4) the ALJ "erroneously evaluated the plaintiff's subjective complaints," and (5) the ALJ "failed to properly develop the administrative record." (Pl.'s Mot. for J. of Reversal at 1-24.)

The Social Security Act has specific requirements and a very detailed definition of disability to determine if someone qualifies for disability insurance benefits or supplemental security income payments under the act. (Def.'s Mot. for Affirmance at 2-3 (providing the

definition of disability).) The Commissioner of Social Security has developed a five-step inquiry for the ALJ to use when evaluating disability claims. 20 C.F.R. §§ 404.1520 and 416.920. First, the claim is denied if the claimant is currently engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). Second, the claim is denied if the claimant is not engaged in gainful employment, and the judge has determined that the claimant does not have a "severe medically determinable physical [] impairment" which prevents him from performing basic work. *Id.* § 404.1520(a)(4)(ii). Third, the inquiry ends and disability is presumed if the claimant's impairment "meets or equals" the impairments listed on the Listing of Impairments, § 404, Subpart P, App. 1. *Id.* § 404.1520(a)(4)(iii). Fourth, if the impairment does not "meet or equal" one of the Listing of Impairments, the claim is denied if the judge determines the claimant's RFC allows the claimant to perform his or her "past relevant work." *Id.* § 404.1520(a)(4)(iv). Finally, if the judge rules that the claimant cannot perform "past relevant work," the Commissioner must then prove that the claimant can perform other substantial gainful work, based on his or her age, education, work experience, and RFC or the claimant is entitled to benefits. *Id.* § 404.1520(a)(4)(v).

At step one, in this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Tr. 15.) At step two, the ALJ found that plaintiff had severe impairments but at step three, the ALJ determined that his impairments did not "meet or equal" any in the Listing of Impairments. (*Id.* 15-16.) Therefore, the ALJ had to move on to step four. The ALJ found the plaintiff was able to return to his past relevant work as a general laborer based on his RFC. (*Id.* 16-20.) In the alternative, the ALJ also found, based on the testimony of the VE, that even if plaintiff could not return to his past relevant work there was other substantial gainful work that the plaintiff could perform. (*Id.* 20-

22.)

### A. The ALJ Correctly Determined Plaintiff's Residual Functional Capacity

Plaintiff argues that the "[ALJ] failed to properly assess the [p]laintiff's limitations as required pursuant to Social Security Ruling 96-8p." (Pl.'s Mot. for J. of Reversal at 4.) Specifically, plaintiff advances that the ALJ did not "properly perform a function-by-function assessment of the claimant's ability to perform the physical demands of work"—failing to provide a narrative discussion on how the evidence supports each conclusion, ignoring pertinent evidence, and failing to properly consider the findings of a consultative examiner. (*Id.* at 6-10.) The Ruling provides that the RFC assessment "is a function-by-functional assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," as well as a "narrative discussion describing how the evidence supports each conclusion . . . ." SSR 96-8p. However, "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also* SSR 96-8p ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.").

#### i. The Narrative Discussion is supported by Sufficient Evidence

Plaintiff disputes only that the ALJ failed to provide a narrative discussion, not that the ALJ failed to do a function-by-function analysis. (*See* Pl.'s Mot. for J. of Reversal at 6 ("[The ALJ] did perform a function by function assessment of the [p]laintiff's ability to perform the exertional and non-exertional requirements of work, he failed to set forth a narrative discussion

7

setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence.").) The Court finds that the ALJ included sufficient information to satisfy the narrative discussion requirement of the RFC assessment. Similar to *Hartline v. Astrue*, the ALJ provided evidence of limitations and noted how the conclusions were reached for medical conditions and impairments the ALJ found credible. *See* 605 F. Supp. 2d 194, 205 (D.C. Cir. 2009). The ALJ stated:

> The medical record clearly indicates Mr. Pinkney is HIV positive and has chronic fatigue along with schizophrenia and an organic mental disorder. . . . Dr. Louis Decker . . . noted the claimant's test results . . . results which place him within the mentally deficient and borderline range of intellectual function. Furthermore, the doctor noted Mr. Pinkney suffers from a cognitive disorder, antisocial behavior along with occupational and social problems []. . . . In making this assessment there is no indication that Dr. Decker knew the extent of the claimant's involvement in work related activities since the claimant never shared this information with him. . . . The assessment is not found credible to the extent of claimant being precluded mentally or physically from all work during the period under review in light of other conflicting medical reports and the admitted activities of the claimant and his testimony. . . .
>
> Dr. Gemma Nachbahr and Dr. Patricia Cott . . . gave their professional opinions concerning the claimant's mental impairments to assess the claimant's mental status and neither doctor found the claimant to have anything more than moderate mental limitations. Therefore . . . the claimant's current degree of limitation [is] as follows: moderate functional limitations related to his activities of daily living; moderate difficulties maintaining social functioning; moderate deficiencies of concentration and no episodes of decomposition of an extended duration . . . .

Concerning his physical impairments the ALJ stated:

> Dr. Hall noted the claimant to have some degree of limitation due to his impairments. However, the doctor was of the opinion that, although the claimant's impairments are to be considered, the claimant still has the residual functional capacity and capability to perform medium excertional level work with no physical limitations. . . .
>
> [H]aving the capability noted above by the disability determination doctors the undersigned finds the claimant's impairments impose only minimal restrictions upon him. . . . [plaintiff] has continued to work as a general laborer for Labor Finders of Arlington and has worked, when he is called upon, through 2005 up to the date of the hearing. . . . Although the claimant may experience some degree of difficulty performing his activities of daily living the levels alleged by the claimant are inconsistent with his testimony at the hearing and the medical evidence in the record.

> The undersigned has also considered the effects of the claimant's alleged impairments in accordance with the criteria set forth in the regulations. The claimant has a severe impairment that can be reasonably expected to produce pain, fatigue and functional limitations on work-related activities, but the complaints suggest the objective medical evidence can show a greater impairment severity than is supported by the medical record. Mild to moderate pain or fatigue is no necessarily incompatible with the performance of sustained work activity at appropriate levels of exertion.
>
> There must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that could reasonably be expected to produce the pain, fatigue or other symptoms alleged. . . . Therefore, the objective medical evidence in this case does not support the claimant's testimony as to have totally disabling impairments.
>
> In making this finding, the undersigned specifically rejects the opinion of Dr. Louis Decker expressed . . . to the extent it implies that there has been any 12 month continuous period during which the claimant was precluded from working from onset. . . . Additionally, the preponderance of the evidence within the medical record reveals the claimant's intellectual functioning and mental impairments to be only moderately limiting. Therefore, the undersigned gives greater weight to the disability determination doctors and the progress notes in the medical record. Accordingly, given the effects of Mr. Pinkney's mental impairments the undersigned is convinced that the claimant can engage in substantial gainful activity, as he did in the past as he described the same in the exhibits as medium routine work and which he has been doing, while on call as a laborer, despite his current mental impairments as well as other work identified by the impartial vocational expert.

(Tr. 17-19.)

The ALJ provided some limitations on the functional abilities of the plaintiff based on past work the plaintiff had completed. (*Id.*) Further, the ALJ explained which sources were credible and which were not. (*Id.*) Plaintiff relies on *Lane-Rauth v. Apfel* to argue that the ALJ "failed to describe how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." (Pl.'s Mot. for J. of Reversal at 6-7.) However, in *Lane-Rauth* the judge stated "[t]he law requires that [the ALJ] do more - that the 'ALJ build an "accurate and logical bridge from the evidence to [his] conclusion" so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.' . . .

9

Because the ALJ simply listed all of the evidence without clearly explaining which particular pieces of evidence led him to his conclusion, there is no 'logical bridge,' . . . and no 'thorough discussion and analysis' . . . ." *Lane-Rauth v. Apfel*, 437 F. Supp. 2d at 67 (citations omitted).  In this case, the ALJ did more than merely list the evidence.  The ALJ explained which evidence he found credible and why and also discussed that there was limited information in the medical record, supported by medical findings, to support a ruling of a disability. (Tr. 17-20.)

### ii. The ALJ did Not Ignore Pertinent Evidence

Plaintiff argues that the ALJ ignored pertinent information, specifically the six areas on a worksheet where a DDS examiner determined that plaintiff was moderately limited.  (Pl.'s Mot. for J. of Reversal at 7-8.)  "When the ALJ arrives at a conclusion regarding these strength functions that contradicts some part of the evidence on the record, the ALJ must explain his rationale, for '[t]he judiciary can scarcely perform its assigned review function . . . without some indication . . . [as to] whether [the] evidence was rejected rather than simply ignored.'" *Ross v. Astrue*, 636 F. Supp. 2d 127, 133 (D.C. Cir. 2009) (*citing Brown v. Bowen*, 794 F.2d 703, 708 (D.C. Cir. 1986)).  The ALJ has a duty to explain why they either ignored or rejected contradictory evidence.  *See See v. Wash. Metro.Transit Auth.*, 36 F.3d 375, 384 (4th Cir. 1994).  However, the ALJ did not ignore this information but rather incorporated the findings by relying on the ultimate conclusions of the doctor. (Tr. 200.)  The worksheet checklist served as a section to record summary conclusions but the degree of limitations was summarized in Section III of the worksheet where the DDS examiner concluded that plaintiff "appears mentally capable of performing routine tasks if abstaining from substances and compliant with treatment." (*Id.* 198-200.)

### iii. The ALJ had Sufficient Evidence to Disregard Dr. Decker's Findings

Plaintiff also argues that that ALJ failed to properly consider the consultative examiner, Dr. Decker. (Pl.'s Mot. for J. of Reversal at 9.) "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). As discussed above, the ALJ explained why he was discrediting Dr. Decker's findings. However, the ALJ did not completely reject these findings as the ALJ did limit plaintiff to "low stress routine work." (Tr. 19.) Further, the ALJ's assessment is consistent with the opinions of two other DDS physicians who found plaintiff capable of heavy work. (Def.'s Mot. for Affirmance at 12.) The ALJ partially discredited Dr. Decker because it was not clear whether he knew that since his injury plaintiff had worked as a laborer. Plaintiff argues that the ALJ did not know with certainty that Dr. Decker did not know that plaintiff had worked as a laborer since being injured. (Pl.'s Mot. for J. of Reversal at 9-10.) However, "the ALJ's obligation to develop the record arises only where the ALJ finds the record insufficient to properly evaluate the evidence." *Johansen v. Apfel*, 1999 WL 170793, at *2 (9th Cir. March 23, 1999). Here, it was not necessary for the ALJ to inquire as to whether Dr. Decker knew of the plaintiff's past history with certainty.

### B. The ALJ Correctly Determined that the Plaintiff was Capable of Performing his Past Relevant Work

There is substantial information in the record for the ALJ to conclude that plaintiff was capable of performing his past relevant work. After assessing the plaintiff's RFC, the ALJ concluded that plaintiff was capable of performing the exertional demands of a limited range of medium work. (Tr. 19-20, 22.) The ALJ stated that:

> The claimant's ability to perform the full range of the medium, and alternatively light and

11

>sedentary exertional levels is diminished by the following: [as a precautionary measure] no climbing of ladders ropes or scaffolds; no hazardous heights or moving machinery and no extreme temperature changes. The claimant requires low stress routine work [i.e. work requiring no more than moderate attention and concentration and persistence and pace for prolonged periods]. He should not be involved in work that requires direct regular immediate contact with the general public but is not precluded from all contact with the general public. Additionally, the claimant has the ability to occasionally climb stairs or ramps and to balance and stoop, kneel and crouch, but no work that requires as part of the work requirements crawling; while experiencing moderate pain and moderate limitations as to his ability to perform activities within a schedule and maintain regular attendance for reliability purposes and be punctual within customary tolerances and moderate limitations as to accepting instructions and responding appropriately to criticism from supervisors.

(*Id.* 19-20.) In determining whether, with these limitations, the plaintiff could still perform his past relevant work the ALJ relied, in part, on the testimony of a VE. (*Id.* 20.) The VE was given a series of scenarios, limiting the functions of a potential plaintiff, concluding that there were many jobs available and the plaintiff would be able to return to work as a laborer. (*Id.* 20.) In addition to relying on the determination of the VE, the ALJ ultimately determined that because plaintiff can still perform all or substantially all of the requirements of medium work he is able to perform his past relevant work. (*Id.*) Plaintiff himself indicated that while performing his past relevant work, as a general laborer, he frequently lifted 25 pounds; the heaviest weight he lifted was 50 pounds. (*Id.* at 65.) Further, he did not use machines, tools or equipment, technical knowledge or skills, or write or complete forms. (*Id.*) He did not climb or crawl and for only a small portion of the day did he have to walk, stand, stoop, kneel, or crouch. (*Id.*) Therefore, there was sufficient evidence for the ALJ to conclude that plaintiff could perform his past relevant work. Even if this was not so, in the alternative, the ALJ determined that there were many other jobs available to the plaintiff, satisfying part five of the assessment. If plaintiff is found, as he was here, to currently not be engaging in substantial gainful activity and have a severe impairment (not one that meets the List of Impairments) benefits can still be denied if

plaintiff can continue with past relevant work or the Commissioner demonstrates that other jobs are available. Both options were satisfied here.

### C. The ALJ Correctly Relied Upon the Testimony of the Vocational Expert

Plaintiff argues that the ALJ incorrectly relied upon the testimony of the VE because the ALJ did not include all of the plaintiff's impairments in his hypotheticals. (Pl.'s Mot. for J. of Reversal at 15.) In order for a VE opinion to be useful it must be "in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *See Walker v. Bowen*, 889 F.2d 47, 50, 51 (4th Cir. 1989). However, only the impairments that the ALJ has found to be credible need to be discussed in the hypotheticals. *See, e.g.*, *Mickles v. Shalala*, 29 F.3d 918, 929 n.7 (4th Cir. 1994) (noting that "all of the exertional and non-exertional limitations which the ALJ found to exist . . . were included in the hypothetical" and concluding that this was sufficient). As discussed above, the ALJ relied on summary statements made in Section III of the DDS examiner's worksheet rather than each individual item on the checklist in Section I of the worksheet. In addition, the ALJ accounted for Dr. Decker's findings, despite disregarding some of the findings as unsupported by relevant facts. (Tr. 17.) Therefore, the ALJ's hypotheticals to the VE were substantial. The hypotheticals restricted jobs to medium, light, and sedentary jobs

> involving no ladder, rope, or scaffold climbing; only occasional balancing, stooping, kneeling, crouching, and climbing stairs and ramps; no crawling or upper extremity above-the shoulder lifting and carrying; no exposure to hazardous heights, moving machinery, extreme temperature changes, or concentrated exposure to dust, fumes chemicals, poor ventilation, or excessive humidity, wetness, or vibration; a sit/stand option whether every 30 minutes or at the individual's discretion; low stress, routine types of work; work allowing for moderate pain and moderate limitations in accepting instructions and responding appropriately to criticism, interacting and getting along with co-workers and peers, performing activities within a schedule and maintaining regular attendance, completing a normal work day or work week without interruptions from psychologically-based symptoms, and needing to avoid direct or regular immediate contact with the general public (Tr. 249-251).

(Def.'s Mot. for Affirmance at 15.) The hypotheticals included the information the ALJ determined to be credible and relevant to the determination that plaintiff was not disabled but was limited in several ways. Because all of the relevant information was included, the ALJ's determination that plaintiff was not under a disability is supported by substantial evidence as a whole and therefore, should be upheld.

### D. The Administrative Law Judge did not Erroneously Evaluate the Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ "applied an improper standard in evaluating the plaintiff's subjective complaint." (Pl.'s Mot. for J. of Reversal at 16.) There is a two part test to analyzing subjective complaints. First, "[s]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996). Objective evidence of actual pain is not required. *See Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). Second, there is *Id.* an assessment of the persistence and intensity of the claimant's pain. *See Butler v*, 353 F.3d at 1004.

Plaintiff alleged disabling pain despite contrary objective medical evidence that indicated plaintiff still had the capacity to work. However, the ALJ determined that plaintiff's alleged pain was not supported by the record and not credible to the extent plaintiff alleged. Plaintiff argues that the ALJ applied the incorrect standard even though the ALJ stated "[t]here must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that could reasonably be expected to produce the pain, fatigue, or other symptoms alleged." (Tr. 18.) This is the first step. If there are no medical records to support such a finding, the ALJ does not need to accept all testimony

as true. "Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

Further, deference should be given to the ALJ in the determination of whether a claimant's alleged pain is credible. "In evaluating complaints of pain, an [ALJ] may properly consider the claimant's credibility. The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 2008 U.S. App. LEXIS 3313, at *17 (6th Cir. Feb. 7, 2008) ("Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on a consideration of the entire case record."). The ALJ's determination that plaintiff is not entirely credible is supported by the record. For example, the plaintiff testified that he would work whenever there was work available and had the capabilities to do tasks such as sweep, clean buildings, empty trash, occasionally dig, and lift up to 50 pounds. (Tr. 237-38.) Thus the ALJ evaluation of plaintiff's subjective complaints is supported by substantial evidence.

### E. The ALJ Was Not Required to Send Plaintiff to an Additional Consultative Examination in this Case

Plaintiff advances that the ALJ failed to properly develop the administrative record by not sending plaintiff to an additional consultative examination. (Pl.'s Mot. for J. of Reversal at 20-24.) The ALJ does have a duty to develop the administrative record by inquiring fully into each issue. *See Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980) (noting the importance of this duty when plaintiff is not represented by counsel). The ALJ can order a consultative examination when the needed information is not readily available from the records and an

examination is required in some situations.  20 C.F.R. §404.1419a (2008).  The facts of this case do not require a consultative examination.  Plaintiff has medical evidence from January 16, 2004 regarding his psychiatric condition, as well as a consultative examination on February 12, 2004.  (Tr. 175-76, 178-81.)  Although this is nearly 20 months prior to the administrative hearing there is nothing in the record to show that plaintiff's psychiatric condition had changed during this 20 month period requiring another consultative examination.  Plaintiff has failed to show a basis for ordering an examination and had not shown how additional evidence would help to properly determine plaintiff's RFC.  The ALJ was able to make an informed decision without ordering another consultative examination.  Again, substantial evidence supports the ALJ's decision.

## CONCLUSION

In order to affirm a final decision of the Commissioner the Court must find that the Commission (1) made its decision based on substantial evidence, and (2) applied the correct legal standards.  *See Richardson*, 402 U.S. at 390, 401.  Both of these requirements have been met.  Plaintiff's motion for a judgment of reversal will be DENIED.  Plaintiff has failed to show that the Administrative Law Judge's decision was not based on substantial evidence.  Defendant's motion for affirmance will be GRANTED.

A separate order shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on December 18, 2009.